John Albert MILLER, Appellant,

v.

WARDEN, MARYLAND PENITENTIARY, Appellee.

No. 9351.

United States Court of Appeals
Fourth Circuit.

Argued June 10, 1964.

Decided Oct. 29, 1964.

Alan M. Wilner, Baltimore, Md. (Court-assigned counsel), for appellant.

John W. Sause, Jr., Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Before SOBELOFF, Chief Judge, J. SPENCER BELL, Circuit Judge, and HEMPHILL, District Judge.

J. SPENCER BELL, Circuit Judge.

John Albert Miller was convicted by the Criminal Court of Baltimore City of robbery with a deadly weapon, and on direct appeal, his conviction was affirmed. Thereafter the district court granted a writ of habeas corpus, appointed counsel, and held a plenary hearing. The petition raised three issues: (1) a coerced confession, (2) denial of the right of counsel, and (3) incompetency of counsel.

On this appeal, the parties have agreed to the following statement of the basic facts. At approximately 1:00 p. m. on April 19, 1962, a grocery store in the City of Baltimore was allegedly robbed at gunpoint by two persons—a man and a woman. There were two eyewitnesses to the crime—the grocer and a fourteen-year-old customer. The grocer stated that the man entered the store prior to the robbery and purchased ¼ pound of bologna, left, and then returned with the woman and committed the robbery. Within minutes after the robbery, the petitioner, Miller, and his female accomplice were identified by the customer on the street a block from the grocery store, and they were promptly arrested. The police immediately seached Miller and found some bologna wrapped in paper which the grocer identified as having come from his store. The offense report prepared by the Police Department indicates that as of April 19, 1962, the grocer said he could identify "the subjects." Apparently he saw Miller when he was arrested. Miller had consumed six pints of wine and a bottle of beer between 7:30 a. m. and the time of his arrest; and although it was obvious to the police that he had been drinking, they did not consider him inebriated. He was taken directly to the Western District Police Station, where he was promptly "booked" for "investigation of assault and robbery." He was then interrogated for a period of time, the duration of which is in dispute. The police officers averred that the interrogation lasted approximately 25 minutes, that there were no threats, physical abuse, or inducements, and that the questioning was terminated early in fairness to Miller because of his condition. The petitioner claimed that the interrogation came in two stages and was accompanied by a severe beating, threats, and intimidation. Miller also contends that on several occasions he requested permission to call the following persons: an attorney whom he had previously employed to represent him in a civil case, his sister-in-law with whom he was making his home, and his wife, but that he was told he could make no telephone calls until he gave a statement. The police officers claimed that no such requests were made.

At some time after 12:00 noon on April 20, 1962, Miller was again taken from his cell and interrogated. He appeared to be nervous and "had the shakes." Breakfast had been served between 5:00 a. m.

and 6:00 a. m., although Miller, not having a watch, believed that it might have been later. There is no evidence that lunch was served to him either before or during this round of interrogation. Three police officers were present in full dress uniform, including guns and night sticks. By that time, the police officers already had a written confession from Miller's alleged accomplice, implicating the petitioner. Miller claimed that the police officers threatened to beat him again and to "hang" more charges on him if he did not confess, that they promised to speak with the judge if he did confess, and that when he did make a statement, they did not record it correctly. He further claimed that he again requested permission to make a telephone call and was told that no calls could be made until a statement was given. He testified that after he had signed the statement prepared by the police officers, the sergeant gave him a dime with which to make a telephone call. The sergeant denied that any threats or promises were made, that the statement was improperly recorded, that petitioner requested permission to make a telephone call, and that he gave him a dime.

After signing the confession, Miller called his sister-in-law, who visited him in the police station cell the same day (April 20, 1962). At his request, she called his wife, who was visiting relatives in New York State. On April 22, 1962, he was taken before a judge of the Municipal Court of Baltimore City, where, without counsel, he was asked to enter a plea to the charge of armed robbery. He pleaded "not guilty," and he was then committed to the Baltimore City Jail to await action by the Grand Jury. When his wife returned, she, at his request, contacted the attorney whom he claimed he had requested permission to call earlier and who shortly thereafter sent an associate to see the petitioner. This visit occurred on May 1, 1962, at the Baltimore City Jail. The attorney did not accept employment; and at some time prior to May 29, 1962, Miller appeared before the Criminal Court of

Baltimore City without counsel. The court appointed counsel for him on or about May 22, 1962. This attorney visited Miller in jail once prior to trial. On May 29, 1962, Miller was arraigned, tried, convicted, and sentenced to imprisonment in the Maryland Penitentiary for twenty years.

The habeas court found against the defendant on the issue of physical abuse and the incompetence of appointed trial counsel. We do not reach these issues in view of our conclusion on the point involving denial of counsel. We do not think the petitioner's constitutional rights were violated by the absence of counsel at his preliminary hearing when he pled not guilty. DeToro v. Pepersack, 332 F.2d 341 (4 Cir. 1964). The defendant strenuously contends, however, that the admission of his confession into evidence at his trial constituted a denial of due process in contravention of the Fourteenth Amendment because of the denial by the police of his continual requests to telephone both his attorney and his family before and during his interrogation at the police station. The habeas court was not convinced that the petitioner intended to communicate with his lawyer; it found that "after he sobered up on the evening of the 19th or the morning of the 20th he probably did ask permission to make a phone call, without specifying whom he wished to call, but intending to call his sister-in-law, with whom he was living." Upon the basic historic facts of this case, we think that the court's restricted finding with respect to petitioner's motivation in seeking permission to use the telephone was clearly in error. The court listed three reasons why it reached this conclusion. The first one was that his call on the 20th to his sister-in-law was in fact made about 3:00 p. m., not after 5:00 p. m., and that if he had attempted to reach his lawyer on the phone immediately prior thereto, the lawyer's office probably would have answered. The evidence does not support the finding that the call was made about 3:00 p. m. True, the defendant testified he called at approximately 5:00 p. m.,

204

but he had no watch. His sister-in-law testified that she received the call sometime around 4:00 or 4:30 p. m. The state offered no evidence on this point. But even if we assume that the telephone in a lawyer's office is assiduously answered on ordinary business days, April 20th was Good Friday. No evidence was offered as to whether the attorney's office was open on that day, and we do not think the inference drawn from these facts was justifiable. The court's other two reasons for its conclusion were that when the sister-in-law visited Miller in jail on the 20th he did not ask her to get in touch with his lawyer and that he did not ask his wife to do so until she came to see him on Friday of the following week. These facts also do not support the conclusion which the court has drawn therefrom. Once the confession was made and the police had ceased to press him, the urgent need for counsel had ceased.

Whatever the reason for his failure to contact counsel after the confession, that failure was no proof that the effort was not made before. We cannot overlook the consistency of the petitioner's claim. The sister-in-law testified that on the 20th he told her he was not permitted to make any calls before; on April 27, he told his wife he was not permitted to call his attorney; on May 4, in response to a direct question as to why he had not been called sooner, the petitioner repeated the complaint to the attorney he sought to engage; and on May 22, he related the same story to his court-appointed counsel. At least two of these witnesses, the two attorneys, ought to be considered reliable. This is not evidence adduced for the first time after a habeas petition; these statements were made prior to his trial and consistently reported by the witnesses. The petitioner testified that he had the lawyer's card in his pocket when arrested, for he had previously engaged him in a personal injury suit. The fact that he had previously engaged counsel in another matter weighs against the court's inference that the petitioner did not intend to communicate with his counsel in this case before making a statement to the police. To these facts must be added the further fact that although the petitioner testified categorically that he requested the turnkey to permit him to make a call and was informed that he could not do so as the petitioner was being held for investigation, the turnkey was not called by the state to testify. On these facts, we do not have to reach the question of whether the prisoner was subjected to coercion in being told that he would not be allowed to communicate with his family or anyone else until he confessed, as the petitioner contends. Cf. Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). We think the case is clearly covered by Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In that case the Court said:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular subject, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. [335], at 342, [83 S.Ct. (792), at 795 (9 L.Ed.2d 799)] and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." 378 U.S. at 490–91, 84 S.Ct. at 1765.

We do not think it necessary here to rely upon that decision to the full extent of its holding according to the dissenting opinion of Mr. Justice White, who read the decision to hold that it was not necessary that the accused should have retain-

ed counsel or should have asked to consult with counsel in the course of interrogation.

> "At the very least the Court holds that once the accused becomes a suspect and, presumably, is arrested, any admission made to the police thereafter is inadmissible in evidence unless the accused has waived his right to counsel." 378 U.S. at 495, 84 S.Ct. at 1767.

 We do not, however, think that the majority opinion in Escobedo should be interpreted so narrowly as to hold that the prisoner must upon each request to use the telephone expressly explain to his custodians that he intends to telephone his attorney. If the intent exists and he is denied an opportunity to contact the outside world, it is enough to bring this case within the holding in Escobedo, if not also within that of Haynes. We do not think the evidence supports the court's finding with respect to what Miller "intended" when he asked permission to telephone, either of the turnkey or the officers. It would indeed be a narrow construction of that decision to distinguish this case on the ground that Miller did not expressly explain to the officers why he wanted to use the telephone. Therefore, the five criteria laid down by the majority for its decision in Escobedo all existed in this case.

There can be no doubt that the investigation had focused on the defendant even before the interrogation began. The police had two eyewitnesses to the crime, one of whom had caused the defendant's arrest by identifying him on the street near the scene. At the time of the arrest, he had in his possession the meat which he had purchased at the store wrapped in paper identified by the victim. He had been taken into custody. The police testified that they were particularly trying to discover by their questions the whereabouts of the weapon used in the offense. While the police testified that they had advised the defendant of his "constitutional rights," they conceded in response to direct questioning that they had not told him of his right to counsel or his right to remain silent. Only in the confession itself do we find any evidence of this advice, and obviously under the circumstances that document may not establish its own validity. Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336 (1963).

Finally, we hold that the prisoner's failure to take the stand in the state trial to testify to the alleged physical abuse which he contends took place during his interrogation did not constitute an intentional relinquishment or abandonment of his right to counsel during that interrogation. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

The order of the district court is reversed, and the case is remanded in order that the court may enter an order in conformity with this opinion requiring the respondent to retry the prisoner promptly or to release him.

Remanded.