John Frank **LEDBETTER**, Jr., Appellee,

v.

**WARDEN, MARYLAND PENITEN-TIARY**, Appellant.

**No. 10154.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 5, 1966.

Decided Sept. 22, 1966.

 

Albert V. Bryan and Haynsworth, Circuit Judges, dissented.

R. Randolph Victor, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on the brief) for appellant.

Robert M. Carrico, Jr., Baltimore, Md. (Court-assigned counsel) for appellee.

Ronald P. Sokol, Charlottesville, Va., amicus curiæ.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.

SOBELOFF, Circuit Judge.

This is an appeal by the State of Maryland from the decision of the District Court, granting appellee John Ledbetter's petition for a writ of habeas corpus. Ledbetter was sentenced to life imprisonment upon his 1960 conviction in the Baltimore City Criminal Court for first degree murder. After Ledbetter has exhausted state remedies, the District Court conducted a plenary hearing on his claims, and held that oral and written statements, taken from him by the police and used at his trial, had been obtained in violation of the Due Process clause of the Fourteenth Amendment. The District Court further held that the failure of Ledbetter's trial counsel to object to the admission of these statements did not constitute an intelligent waiver under the standards laid down by the Supreme Court. Thus, Ledbetter was ordered released unless the State should retry him without the use of incriminating statements, or note an appeal. We concur in the findings and rulings of the District Court, and the decision will be affirmed.

On the evening of August 10, 1959, police began an investigation of the robbery-murder of Lawrence North. The following morning they arrested and held for investigation one Jerry Dennis, a codefendant in Ledbetter's trial. After some questioning by the police, Dennis confessed, implicating Ledbetter and two others. Acting on this information, the police arrested Ledbetter at his place of work sometime between three and five o'clock that afternoon. Sergeant Kendrick, who issued the arrest order, testified at the District Court hearing that Ledbetter was at that time regarded as a principal in the case, and was picked up in order to be charged.

Ledbetter was nineteen years old, had completed the eighth grade, and from the hearing below it appears that this was his first serious encounter with the po-

lice. When he was brought to the station the police were taking a written statement from Dennis, so Ledbetter was kept in a small room guarded by Officer Moser. Although there was some dispute as to whether Moser was actually interrogating petitioner during this interval, the District Court found that Officer Moser led the conversation around to the crime and that Ledbetter made several oral incriminating statements. On the basis of the evidence at the hearing, the District Judge also found that before making these inculpatory statements Ledbetter requested an opportunity to telephone his family, and his request was refused. Moreover, the police admitted that they at no time advised Ledbetter of his right to remain silent, that any statements he might make could be used against him at his trial, or that he had a right to an attorney.

Later, about 8:30 that evening, Ledbetter was interviewed again, this time by six police officers. The statement which had earlier been given by his accuser, Jerry Dennis, was read to him, and the police again failed to advise Ledbetter of any of his rights. Ledbetter signed a written statement describing his part in the crime. At the trial, conducted in February, 1960, the written confession and Officer Moser's account of the oral admissions were introduced into evidence without objection from the defendant's counsel.

## I

■ We agree with the District Court that from the totality of circumstances,[1] Ledbetter's confessions were obtained in violation of his due process rights. This youth was alone in the hands of the police, and his requests to contact his family were refused. He was not told of his right to maintain silence, or that his statements might be used against him. And he was not informed of his

right to an attorney. Considered against the background of Ledbetter's age and education we think the District Court correctly found that the confessions were not voluntarily given. Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); see Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Miller v. Warden, 338 F.2d 201 (4th Cir. 1964).

When Ledbetter was refused permission to make a phone call he knew full well that the police intended to hold him incommunicado and pursue their interrogations until they would bear fruit. The crucial inquiry is the suspect's knowledge that he will continue to be kept incommunicado. The coercive influence cannot be measured by the number of hours Ledbetter was actually detained, but only by the effect upon him of the obvious intention of the police to persist in their secret inquisition without granting his request to communicate with the outer world. The production of a co-suspect's implicating statement, coupled with the denial of access to the telephone, made it clear to Ledbetter that he could gain respite only by confirming the statement. The principle of Haynes v. State of Washington, supra, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513, reaffirmed in Davis v. State of North Carolina, supra, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966), is operative here and the difference in the factual situations is not decisive.

The conclusion that there was a violation of due process here is not impaired by the recent Supreme Court decision in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The Court was careful to stress that while it was denying retroactive effect to the safeguards spelled out in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

---

1. The District Court hearing was the first inquiry into the circumstances surrounding the confessions. The point was urged in a post-conviction proceeding, but dismissed because it had not been raised on direct appeal. In denying an application to appeal from the denial of post-conviction relief, the Maryland Court of Appeals affirmed this ruling on the ground that the point had been waived at the original trial. See Ledbetter v. Warden, 234 Md. 643, 200 A.2d 81 (1964).

(1966), and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), nevertheless persons whose trials have been completed before those decisions are not precluded from invoking "a substantive test of voluntariness which, because of the persistence of abusive practices, has become increasingly meticulous through the years." 384 U.S. at 730, 86 S.Ct. at 1779.

"That test," said the Court, "now takes specific account of the failure to advise the accused of his privilege against self-incrimination or to allow him access to outside assistance. * * Thus, while *Escobedo* and *Miranda* provide important new safeguards against the use of unreliable statements at trial, the nonretroactivity of these decisions will not preclude persons whose trials have been completed from invoking the same safeguards as part of an involuntariness claim." Ibid.

All that the District Court did was to apply the "increasingly meticulous" standards of voluntariness to Ledbetter's case. Indeed, while the Supreme Court denied Johnson relief on direct appeal, the door was opened to him to make a collateral attack based on the principle of *Haynes* and *Davis:*

"Petitioners now assert that they were prevented from obtaining outside assistance while they were being interrogated. The police allegedly refused them access to their families or a lawyer and also thwarted the efforts of their relatives and friends to contact them. We have already pointed out that allegations of this kind are directly relevant to a coerced confession claim and that such a claim presents no problem of retroactivity. See also Davis v. State of North Carolina, 384 U.S. post, P. 737, 86 S.Ct. 1761, 16 L. Ed.2d 895." 384 U.S. at 735, 86 S.Ct. at 1782.

The coercion which both *Haynes* and *Davis* condemn is any practice which has the effect of controlling the prisoner's will. The District Court found that this was the effect here, and we uphold that finding.

## II

We also agree that trial counsel's failure to object to the admission of the written confession and oral statement did not forfeit Ledbetter's right to challenge his conviction by federal habeas corpus. In Fay v. Noia, 372 U.S. 391, 438–440, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963), the Supreme Court acknowledged a "limited" discretion in the District Court to dismiss a habeas corpus petition where the applicant "has deliberately bypassed the orderly procedure of the state courts." This discretion, said the Court, is to be "narrowly circumscribed," however, and the governing standard is the "considered choice of the petitioner"; waiver will be implied only where the applicant made "an intentional relinquishment of a *known* right or privilege." Ibid. (Emphasis added.) See Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Thus,

"If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons *that can fairly be described as the deliberate by-passing of state procedures*, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits. * * * At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. * * A choice made by counsel not participated in by the petitioner does not automatically bar relief." Fay v. Noia, 372 U.S. at 439, 83 S.Ct. at 849 (Emphasis added.)

The District Court found that Ledbetter's counsel did not consult with him concerning the crucial decision not to object to the confession and the oral statement. Cf. United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (5th Cir. 1958),

cert. den., 361 U.S. 838, 80 S.Ct. 58, 4 L. Ed.2d 78 (1959). And while that fact alone will not necessarily bar a finding of waiver, see Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed. 2d 408 (1965), the District Court pointed out that the confession and the statement were the *only* evidence linking Ledbetter to the crime. The federal challenge thus went to the very foundation of the proceeding, and waiver should not be implied except in the clearest instance of a deliberate bypassing of state remedies. See Brown v. Allen, 344 U.S. 443, 503, 73 S. Ct. 437, 97 L.Ed. 469 (1953) (Frankfurter, J., concurring); Whitus v. Balckom, 333 F.2d 496 (5th Cir. 1964).

Any intimation of a deliberate design to knowingly forego the federal constitutional claim is negated by the fact that at the time of the trial, there was no basis on which a trial attorney could reasonably object to this evidence. Ledbetter was tried in 1960, three years before the decision in Haynes v. State of Washington, supra, and other decisions which have subsequently fashioned the standard by which the procurement of this pretrial confession is to be judged.[2] Thus, as the Second Circuit has pointed out, "[i]t would be the height of unreason * * * to insist that [Ledbetter] should have objected to evidence which was properly admitted under the applicable law at the time of trial." United States v. La Vallee, 334 F.2d 331, 333 (2d Cir. 1964); see United States ex rel. Angelet v. Fay, 333 F.2d 12 (2d Cir. 1964). Certainly, the failure to make what would have been at the time a fruitless objection falls far short of the deliberate bypassing of state remedies with which the Supreme Court was concerned in Fay v. Noia.

Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), does not call for a different conclusion. There, the state contended that defendant's challenge to illegally seized evidence was precluded by his local attorneys' failure to raise the objection at trial. The case was tried in 1963, *after* the Supreme Court's decision in Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), holding such evidence inadmissible in state criminal proceedings. In an opinion by Mr. Justice Brennan, the author of Fay v. Noia, supra, the Court remanded the case to the state court for a hearing on whether petitioner's counsel had "deliberately bypassed the opportunity to make timely objection in the state court, and thus that the petitioner should be deemed to have forfeited his state court remedies." 379 U.S. at 450, 85 S.Ct. at p. 569. After restating the waiver standard of Fay v. Noia, the Court noted several possible reasons for a strategic decision to allow the disputed evidence into the case, and observed that if so, deliberate bypassing of the contemporaneous objection rule could be deemed a waiver.

The discussion in *Henry* is simply an application of the waiver principle delineated in Fay v. Noia, and does not purport to alter that standard in any way. It is inapplicable where, as here, there existed no known ground on which the trial attorney could have based an objection at trial. In the context of this case there was therefore no "strategic choice" to be made, and none can be supplied by the fact that when the confession was admitted in evidence—as it inevitably would have been in 1960—the lawyer made an argument based on it. Since the confession and the statement were the only evidence linking Ledbetter to the offense, it is patent that the attorney —whom the District Court found to be competent—would have objected strenuously to their admission if he had thought that he had any legal ground to do so. His lack of prescience and failure to anticipate the later decisions should

---

2. Four members of the Court (Justices Clark, Harlan, Stewart and White) dissented in Haynes on the grounds that that decision was "an abrupt departure from the rule laid down in the cases of this Court and an enlargement of the requirements heretofore visited upon state courts in confession cases." 373 U.S. at 503, 83 S.Ct. at 1347 (dissenting opinion of Mr. Justice Clark.)

not deprive petitioner of his opportunity to assert the constitutional right on habeas corpus.

█ It is plain that once the police had Jerry Dennis' confession, they interrogated Ledbetter in the hope of insuring his conviction. Cf. Spano v. New York, 360 U.S. 315, 324, 79 S.Ct. 1202, 3 L.Ed. 2d 1265 (1961); Malinski v. People of State of New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945). But the techniques used to secure the admissions —incommunicado detention and questioning, refusal of outside contacts, and failure to inform the suspect of even his most basic rights—were inherently coercive, and afforded the accused no real choice between admitting and denying his participation in the crime. See Haynes v. State of Washington, supra 373 U.S. at 514, 83 S.Ct. 1336. No matter how guilty a suspect may *appear* to be, our system of law, with jealous regard for his rights, demands that he be accorded due process at every step of the proceedings against him. At the most critical stage of the proceedings against Ledbetter—the evening of his confession —these safeguards were denied him. For this reason, the confession must be excluded from any subsequent trial. See Smallwood v. State of Maryland, 367 F.2d 945 (4th Cir. 1966).

Affirmed.

ALBERT V. BRYAN, Circuit Judge, dissenting:

I cannot concur in the decision to set aside Ledbetter's conviction because of the admission at trial of his oral and written acknowledgments of guilt. His counsel, in practice for 32 years and declared by the District Court to be "an experienced criminal lawyer engaged by his family", advised the State trial court that he had no objection to the oral and signed statements. Furthermore, had he objected, he would have been overruled as the statements were not in fact involuntary.

The first question, then, is whether a Federal court can set aside the conviction as un-Constitutional because it thinks the attorney ought not to have waived objection, although this decision was the dictate of his best judgment. The other question is whether Ledbetter was so circumstanced when he made the statements that the law imputes involuntariness to them, i. e., were they "the product of a will overborne". Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (June 20, 1966).

Ledbetter was convicted of first degree murder with life imprisonment. The facts of the homicide are fairly summarized in the opinion of the District Court:

> "The death resulted from the brutal slugging and robbing of an old man by four 19-year-old youths."

> \*　\*　\*　\*　\*　\*

> "The four youths [on August 7, 1959] had been drinking together; it is a reasonable inference from all the evidence that they wanted money and decided to rob someone on the street. An old man, walking alone, approached them. According to Ledbetter's confession, Jerry Dennis, one of the four, said: 'I'm gonna get this here one.' Dennis tied a handkerchief around his knuckles and slugged the old man on the jaw, causing him to fall and strike his head, which resulted in his death. Ledbetter tried to pull the man out of the street where he had fallen, while the other two robbed him of money and a ring. They left the victim where he lay, and when the police found him, it was thought at first he had had a stroke."

I. Although Ledbetter had not told his attorney of the oral admissions made to the police officers, the attorney had his signed statement before trial and learned of the oral statements on the morning of, but prior to, the trial. He was surprised by the latter, for they were more incriminating than the signed confession. They revealed a foreknowledge by Ledbetter of the intended assault. These statements were obtained, said the District Court, with "[n]o threats or promises \* \* \* made to Ledbetter, and no force \* \* \* used".

A seasoned trial lawyer, Ledbetter's counsel consented to allow all the statements into evidence. Like his attorney, the Maryland Court of Appeals thought the written statement "exculpatory in part". Ledbetter v. State, 224 Md. 271, 167 A.2d 596, 597 (1961). The move could have been a play for leniency as an exhibition of candor and truthfulness. In any event, it was obviously a tactic the lawyer deemed expedient and wise. As noted by the Supreme Court in Henry v. State of Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564, 569, 13 L.Ed.2d 408, (1965):

> "[C]ounsel's deliberate choice of the strategy would amount to a waiver binding on petitioner * * *. Although trial strategy adopted by counsel without prior consultation with an accused will not, where the *circumstances are exceptional,* preclude the accused from asserting constitutional claims, * * * we think that the deliberate bypassing by counsel of the contemporaneous-objection rule as a part of trial strategy would have that effect in this case." (Accent added.)

There is no evidence of "exceptional" circumstances here. Assuming the existence of a basis for an objection, counsel's deliberate strategy in not protesting the statements constituted a waiver binding on Ledbetter. True, the recent Supreme Court decisions in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966); Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (June 20, 1966); and Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (June 20, 1966) did not touch upon the issue of waiver at the trial level.[1] However, if an accused may consent to interrogation before trial, then most assuredly as a defendant with counsel, pari ratione, he may waive ob-

jection at trial to otherwise inadmissible statements. At either stage a waiver results in the reception of his incriminating utterances.

Notwithstanding, the District Court ordered the release or a re-trial of Ledbetter, concluding that there was no waiver for the following reasons:

> "It is true that Ledbetter's trial counsel stated that he had no objection to the admission of any of the oral or written statements, but *this was apparently said in the belief, that only the signed statement was to be offered.* In any event, the evidence indicates that counsel took that position without consulting Ledbetter. *Ordinarily such consultation is not necessary where competent counsel is conducting a difficult trial.* Here, however, there was no other evidence in the case connecting Ledbetter with the crime. There is no evidence that Ledbetter knew of the constitutional rights involved. And *it appears from the evidence that trial counsel did not give as much attention to the preparation of this point as he would give today,* in view of the recent Supreme Court decisions. Under all the circumstances the *Court cannot say that Ledbetter's representation by his trial counsel fell below the standard established* by Snead v. Smythe, 4 Cir., 273 F.2d 838 (1959), and later Fourth Circuit cases. On the other hand, this Court cannot say that there was any such waiver of constitutional rights as would meet the tests prescribed by * * * [listed decisions of the Supreme Court]". (Accent added.)

As the District Judge correctly observed and contrary to the implication of the majority, counsel did not have to obtain his client's permission to withhold an objection. Would this court prefer Ledbetter's judgment to that of his experi-

---

1. Nothing to the contrary can be spelled from footnote 69 in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966). Aside from the purposeful character of the waiver instantly, the observation in the footnote has no relevancy presently, because it was based on Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and on *Miranda* itself, both of which are non-retroactive. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (June 20, 1966).

enced counsel, and would it have been fair to leave the determination to Ledbetter? For counsel to have done so would, indeed, have proved his representation inadequate and ineffective.

The critical finding of the District Court of no waiver is simply a speculalation. In essence, it is what the judge felt trial counsel *might* have believed or thought or *might do today*. Although Ledbetter's attorney is acknowledged as completely competent, it is surmised that he "did not give as much attention to the preparation of this [evidential] point as he would give today, in view of the recent Supreme Court decisions". The references to "today" and the "recent decisions" bear re-examination in the light of the most recent enunciations, post, declaring the effect on the law of Ledbetter's trial of decisions announced thereafter. I cannot join my brethren in approving a release or new trial order resting on conjecture of the District Court.

II. Nor is the majority willing to do so. It finds no waiver for quite a different reason: *"there was no basis on which a trial attorney could reasonably object to the evidence"*. This is precisely correct. It means, of course, that the oral admissions and signed confession at the time they were offered into evidence were in fact voluntary; thus there was no basis for an objection. Of course, in this context there could be no waiver as Ledbetter had no rights which he or his counsel could waive. But, the majority says, by virtue of *subsequent* decisions, Ledbetter's admissions have become involuntary and thereby subject to collateral attack. Not only do those decisions cited by the majority fail even to intimate a change in the voluntary-involuntary standard, but even if so read, they are not imbued with automatic retroactivity.

The majority finds such involuntariness here from the holdings in the following cases: Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed. 2d 895 (1966); Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Miller v. Warden,

338 F.2d 201 (4 Cir. 1964). The District Court added Escobedo v. State of Illinois, supra, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); and Culombe v. State of Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), among others. But none of these decisions mechanically convert into involuntary declarations those which, after close and conscientious scrutiny at trial, have been found to be altogether voluntary. These cases do no more than announce that certain circumstances are "significant" as "factors tending to prove" coercion or other unfair influence. Johnson v. State of New Jersey, supra, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (June 20, 1966). Moreover, save *Haynes*, their history offers no resemblance to the frame of the present admissions and confession.

Voluntariness in fact has always been, and remains, the standard and the determinative inquiry. Davis v. State of North Carolina, supra, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (June 20, 1966). See Haynes v. State of Washington, supra, 373 U.S. 503, 513–514, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). In *Davis* the Court stated: "The sole issue presented for review is whether the confessions were voluntarily given or were the result of overbearing by police authorities." The Federal district court, to repeat, found that Ledbetter's statements were not the issue of threats, promises or force of any sort. Nor, looking at the atmosphere and occasions of his criminations, can they be typed as involuntary by reason of their setting.

Ledbetter was 19 years of age; his education included completion of the eighth grade. He was brought to the police station between the hours of three and five o'clock in the afternoon of August 11, 1959. The sergeant in charge was then taking the written statement of Dennis, an accomplice. Waiting for the sergeant, Ledbetter "was kept for a while in a small room, with Officer Moser

standing guard at the door". With the door open, Moser was inside. Ledbetter and the officer talked on many matters before the conversation turned to the fatal assault. In plain sight of him, Moser noted on a pad what Ledbetter was saying—and while he was saying it. These oral statements by Ledbetter indicated his before-the-fact knowledge of the attack.

About 8:25 P.M. Ledbetter was taken to the sergeant's room. There Dennis' statement was read to him. It implicated Ledbetter as an active participant in the murder, and Ledbetter acknowledged its general correctness. A separate written statement, executed by him around 10:20 the same evening, did not include the more damaging oral inculpation of pre-knowledge.

The grounds asserted for invalidating the oral admissions and written confession are these: Ledbetter had been refused use of the telephone to call his aunt and uncle with whom he lived; he was not told of his right to remain silent or that any statement he made might be used against him; and he was not advised of his right to a lawyer. But all of this occurred in Haynes v. State of Washington, supra, 373 U.S. 503, 83 S. Ct. 1336, 10 L.Ed.2d 513, the factually nearest to the instant case of all those cited to overthrow the conviction. The Supreme Court did not there cry down the *oral* admissions made by Haynes soon after his arrest. It denunciated only his written statement, taken after an overnight detention incommunicado.

As Ledbetter's written confession was not so accusatory as were his oral statements, with the latter clearly admissible it was to his advantage to have the written confession in evidence. Nor was it vulnerable like the *Haynes* written confession, as only two hours were occupied in taking it. This period included the reading of Dennis' statement and the questioning, typing, submission and signing of Ledbetter's. The oral admissions to Officer Moser were made after Ledbetter had been at the station house only an hour. In all, Ledbetter was in custody not more than six hours for interroga-

tion, during which, the District Court repeatedly stresses, "No threats or promises were made to Ledbetter, and no force was used". I cannot agree that these circumstances spell coercion in fact or in law.

Of questioning similar in character, or even more pressing than Ledbetter's, the Court said in Miranda v. State of Arizona, supra, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966), "In these cases we might not find the defendant's statements to have been involuntary in traditional terms". The instant case *must* be measured for voluntariness in "traditional terms" for it was concluded before *Miranda* and *Escobedo*. See Johnson v. State of New Jersey, supra, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (June 20, 1966).

Referring to "the failure to warn accused persons of their rights, or the failure to grant them access to outside assistance" as factors tending to show involuntariness, the Court said in Johnson v. State of New Jersey, supra, "Prior to *Escobedo* and *Miranda*, however, we had expressly declined to condemn an entire process of in-custody interrogation solely because of such conduct by the police. See Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); Cicenia v. Lagay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). Law enforcement agencies fairly relied on these prior cases, now no longer binding [since *Escobedo* and *Miranda*, see footnote 48 in *Miranda*], in obtaining incriminating statements during the intervening years preceding *Escobedo* and *Miranda*."

With this dilution of the warning and non-access factors, and with *Escobedo's* requirement of counsel rendered inapplicable here by *Johnson*—the very predicates of the decision of the District Court and now of this court—the undueressed statements of Ledbetter should not be declared involuntary to relieve him of condign conviction and sentence.

I am authorized to add that Judge HAYNSWORTH joins in this dissent insofar as it differs from the majority on the merits.