Fred L. **GIBSON**, Petitioner,

v.

C. C. **PEYTON**, Superintendent of the Virginia State Penitentiary, Respondent.

Civ. A. No. 66–C–95–A.

United States District Court
W. D. Virginia,
Abingdon Division.

Nov. 30, 1966.

No appearance for petitioner.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

OPINION and JUDGMENT

DALTON, Chief Judge.

This case came before the Court upon a petition for a writ of habeas corpus

by Fred L. Gibson, a state prisoner, pursuant to the provisions of 28 U.S.C. § 2241 and filed *in forma pauperis*. The case was ordered transferred to this Court from the United States District Court for the Eastern District of Virginia, Norfolk Division, pursuant to Public Law 89–590 effective September 19, 1966.

Petitioner is now serving a thirty-five (35) year sentence for armed robbery pursuant to his conviction in the Circuit Court of Russell County, Virginia; sence having been imposed on March 13, 1963.

■ Petitioner did not appeal from this conviction. His state habeas corpus petition alleges that he failed to do so because of his ignorance of the appellate procedure and because he was not advised that he could do so. He did, however, subsequently exhaust his remaining state remedies through habeas corpus. Thus by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), he is properly before this Court, his failure to appeal from the state circuit court decision not constituting an intelligent waiver which could be an adequate and independent state ground precluding relief in the federal courts.

■ The Circuit Court for Russell County, Virginia, found in the state habeas corpus proceeding

* * * that the petitioner has failed to establish by a preponderance of the evidence that first, that he was illegally arrested; second, that his house was illegally searched; third, that he was coerced by officers and the Commonwealth's Attorney into confessing; fourth, that he did not have adequate and effective representation by his court appointed attorneys, T. J. Bondurant and S. M. Quillen; fifth, that any of his constitutional rights were denied him; and sixth, that there was a denial of due process of law in his trial in this court.

The Supreme Court of Appeals refused to grant a writ of error. This Court concurs with the findings and ruling of the Circuit Court of Russell County and the petition will be dismissed and the writ denied.

On December 29, 1962 police began an investigation of the robbery-murder of one Robert Porter. On that same day the Justice of the Peace issued a warrant to S. H. Banner, the Sheriff of Russell County, Virginia for the arrest of Fred L. Gibson for robbery. The petitioner was arrested at his home at approximately 1:00 a. m. on December 30, 1962. A cursory search of his immediate surroundings was made and he was taken to the jail at Lebanon, Virginia where he was questioned. Then because the jail was being remodeled, the petitioner was taken that same night to the Washington County jail at Abingdon, Virginia. The petitioner was there questioned by the sheriff and commonwealth attorney of Russell County. On the afternoon of January 2, 1963 the petitioner signed a confession in which he admitted waiting on a hillside while his brother went, with petitioner's knowledge, to rob Robert Porter and further admitted the receipt of about two-hundred and sixty-five ($265.00) dollars from his brother immediately after the robbery, which money the petitioner understood to be part of the proceeds of the robbery. At this time he also told the officers where his part of the money was hidden. On January 2, 1963 petitioner was additionally charged with the murder of Robert Porter. Subsequently the petitioner waived a preliminary hearing in the County Court on both of these charges and was thereafter indicted on both of them by the grand jury for the February Term of Court. Because the petitioner is indigent, the state court appointed two attorneys to represent him. The indictment for murder was subsequently not prosecuted. To the robbery indictment the petitioner entered a guilty plea and waived the right to a jury trial. He was found guilty and, after a pre-sentence report was made to the Court on defense counsel's motion, the Court imposed on March 13, 1963, a sentence of thirty-five (35) years. To this

decision petitioner did not appeal. On January 29, 1965 petitioner filed a petition for a writ of habeas corpus in the Law and Equity Court of Richmond, Virginia. A hearing was held in this petition in Russell County, Virginia and, as noted above, this petition was dismissed and the writ denied. The Supreme Court of Appeals refused to grant a writ of error.

The allegations which petitioner says entitle him to a writ of habeas corpus are as follows:

1. The initial arrest warrant was issued without probable cause having been shown or supported by reliable information.

2. The search of the chair in petitioner's house which contained the contraband was without a warrant and thus illegal.

3. The statement which he signed was incriminating and was signed involuntarily. The coercion which lead to the signing of the statement arose from the following four reasons:

(a) While incarcerated in the Lebanon and Russell County jails, the defendant was held incommunicado from his relatives until after he confessed.

(b) He was never advised of his right to remain silent.

(c) He repeatedly asked to be allowed to contact a lawyer but was not allowed to place a telephone call to one himself. Instead, he had to rely on the jailers to do this for him, which jailers, he alleges, did not place the call until after he confessed.

(d) He was promised a light sentence of eight to twelve years if he would confess to his part in the robbery.

4. Information of the death of Robert Porter was withheld from petitioner until after his confession was made.

5. His waiver of the preliminary hearing was not willful and it was without the assistance of counsel.

6. He was not effectively represented by counsel because the two court appointed lawyers failed to investigate the facts surrounding his arrest, the search and the confession. Furthermore, he alleges defense counsel called no witnesses in his behalf and did not advise him of his right to appeal.

The Court having studied the record is satisfied that it is an adequate basis on which to make its decision and there is no need for a plenary hearing.

Petitioner's allegations are here addressed. First he maintains that the warrant was issued without probable cause. The mere issuance of a warrant is not prima facia evidence of the existence of probable cause for its issuance. But the trial court found that the petitioner had failed to establish by a preponderance of the evidence that he was illegally arrested. The presumption of this federal district court is that the state court's finding is valid unless there appears in the record, either at trial or at the habeas corpus hearing, reason to believe otherwise. The petitioner nowhere negatives the existence of probable cause for the warrant. Thus this Court holds that the arrest was made on a valid warrant. The fact that the arresting officer might not have had a copy of the warrant in his possession at the time of the arrest is not significant so long as the sheriff, who ordered the arrest by car radio, had the warrant in his possession. The warrant in the record is dated December 29, 1962, the day before the arrest was made. Additionally, petitioner maintains that his house was searched without a search warrant at the time of his arrest. The deputy who participated in the arrest testified at the habeas corpus hearing that the house was not searched (Tr. 36). The petitioner did not establish by any evidence that it was searched illegally. Therefore, this Court finds that the arrest was valid in this respect also.

Second, the petitioner alleges that the search of the chair in petitioner's house which contained the contraband was accompanied by an illegal search of his unoccupied house, both searches being without a warrant. The deputy sheriff

at the time testified under oath (Tr. 37–39) that he and the other officers did not have a search warrant when they went to the house to look for the money but that they were operating on the information given them by the petitioner; that he had offered no objection to their going to get the money and, in fact, he had told them to go and get it. This Court finds that this uncontradicted report of the conduct on the part of the petitioner constitutes permission given from him to the officers to go and recover the money. Thus no search warrant was needed for the search of the chair. As to the rest of the house, the officer testified that nothing other than the chair was searched.

■ Third, part (a), the petitioner alleges that while incarcerated he was held incommunicado from his relatives until he confessed. The petitioner was held prisoner at two places, namely Lebanon, Virginia and Abingdon, Virginia. To support his allegation, petitioner produced one witness, his brother, Mr. Everett Gibson, who testified that he had been to the Abingdon jail to see the petitioner. The testimony of this witness (Tr. 14–15) appears weak. His answers to several questions are quite unresponsive. His testimony must be balanced against that of Clarence McGuire, then deputy sheriff in Washington County, who testified that visiting hours in Abingdon were from two until five on Sundays, and if any of the petitioner's family came to see him, they absolutely would have been permitted to see him. But if they came at a time other than two to five on Sunday, they would have been turned away. Also the then commonwealth attorney of Russell County testified (Tr. 17) that the Washington County jailers were certainly not under any instructions to prohibit visitors from seeing the petitioner if they came during visiting hours. Additionally, the cell mate of the petitioner in the Washington County jail testified that he did not know whether anyone had come to see the petitioner or not. (Tr. 31) This Court therefore finds that the petitioner was not held incommunicado from

his relatives while a prisoner at Lebanon and Abingdon, Virginia.

Third, part (b), petitioner contends that he was never advised of his right to remain silent. This, as so many of the questions which are raised in habeas corpus, is simply a question of credibility of the witnesses. The petitioner contends as stated above, and the officers and commonwealth attorney testify that, on the contrary, he was advised of his right to remain silent. At page 17 of the state habeas corpus hearing record, the commonwealth attorney testified under oath:

I advised him that he had a right to talk with an attorney before he talked with us, or in fact not even talk to us, or that he had a right not even to talk with us at all, if he so desired.

And in the same record at page 32 the Sheriff at that time testified as follows:

Q. Did you interrogate Fred Gibson?

A. Yes, sir.

Q. For a statement?

A. Yes, sir.

Q. Was Fred Gibson advised of his rights prior to making a statement?

A. Yes, sir.

Also, the deputy sheriff, Bradley, testified when asked, "Mr. Bradley, you were present when this statement was given, was Mr. Gibson advised of his rights before he made this statement?" Answer: "Yes, he was." These three witnesses are, by the petitioner's own statement, three of the four witnesses present in the room when he made his statement. (Tr. 5)

This Court resolves this conflict in evidence on this point against the petitioner. He has no evidence stronger than his word against the sheriff, the deputy sheriff and the commonwealth attorney. Additionally, the record shows nowhere that he complained of this breach of rights until over a year later while in the Richmond penitentiary.

■ Third, part (c), petitioner alleges that while incarcerated he repeatedly ask-

ed to be allowed to contact a lawyer; and that he was not allowed to place a telephone call himself but had to rely on one of the jailers to do this for him. This call, he says, was not placed until after he signed the confession. This, he claims, abridged his right to counsel and kept him incommunicado adding further to the coercion which led him to involuntarily sign the statement. This allegation the Court has considered carefully. While the guideline of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) are not to be applied retroactively,

> * * * nevertheless persons whose trials have been completed before those decisions are not precluded from invoking 'a substantive test of voluntariness which, because of the persistence of abusive practices, has become increasingly meticulous through the years.'

Ledbetter v. Warden, Maryland Penitentiary, 368 F.2d 490, p. 493 (Sept. 22, 1966, Fourth Circuit). This Court thus invokes a substantive test of voluntariness and applies it to the instant facts. In arriving at a conclusion as to the voluntariness of the statement, two questions are crucial. First, whether the petitioner knew of his right to consult with an attorney and, second, whether petitioner thought that he would be kept incommunicado until he signed a statement. On the first question, petitioner's own testimony and petitions contend that at several points he asked to see an attorney before he made his statement. He states on page 4 of his habeas corpus petition in the Law and Equity Court of Richmond that he gave a list of local lawyers, obtained from a local telephone directory, to the jailer and asked him to make some calls for him. This was done, he says, because he could not give a particular name to the jailer. This action of petitioner, coupled with the commonwealth attorney's testimony (Tr. 17) that petitioner was told of his right to an attorney, convinces this Court that petitioner did know, in fact, that he was entitled to an attorney.

Next we consider what the petitioner did in light of this knowledge. Did he request an attorney? If so, what action did the state take? What effect did the state's action have on petitioner? How does this effect bear on the voluntariness of the confession?

Petitioner says at pages 5 and 10 of the habeas corpus record that he did request that he be allowed to call an attorney or that one be called for him. But, to the contrary, Sheriff Banner testified at page 33 of that hearing that petitioner did not request an attorney.[1]

So there is a question whether petitioner ever asked for a lawyer. But the Court will assume, arguendo, that he did request that an attorney be called for him as he says he did. The question which follows and which bears on the voluntariness is what did the state officers do and what effect did their actions have on the petitioner? Here again the record contains conflicting testimony about what was done. The petitioner maintains that he asked for a lawyer several times before he made his statement. The last request was made, he says, on the morning before the statement was signed when he gave the jailer a list of lawyers to call. The jailer took the list, but no calls were made, according to the petitioner. The commonwealth attorney contends that petitioner spoke to him about a lawyer in Kingsport, Tennessee, and that this lawyer was contacted either by petitioner or by one of the jailers. The lawyer did not come.

---

1. Q. Was Fred Gibson advised of his rights, prior to his making a statement?
A. Yes, sir.
Q. Did he request to have an attorney present?
A. No, sir. He talked that, sometime during the investigation of him, that some of his people were going to try to get an attorney for him, or something or other, he didn't demand an attorney at that time.
Q. Was the statement voluntary on his part?
A. Yes, sir.

■ This Court will not try to decide which story is correct. The all-important fact which rises to the top of this present discussion is that it appears nowhere that petitioner was told he could *not* have a lawyer. Looking at the petitioner's own testimony in its most favorable light, the jailer took the list of lawyers and left petitioner with the hope that he would call them. Maybe the jailer did call them; the Court does not know. But petitioner was not left with the thought that he would be held incommunicado until he confessed. Also, since the list was not given to the jailer until the morning before the confession was made, the period of time which elapsed—between petitioner's request with the list and the confession—was not long enough, in and of itself, to give rise to the fear of being held incommunicado until he signed the statement. Since there is no evidence in the record which indicates that petitioner was told he would *not* be able to see anyone until he cooperated and signed the statement, the instant case is distinquished from Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). There the prisoner testified that when he asked the authorities to contact an attorney or his wife during the interrogation, he was told that they would not unless and until he "cooperated". In that case the confession thus obtained was declared inadmissible.

The present case is also distinguishable from Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) because in that case, where a confession was held to be involuntary, the prisoner was held incommunicado for sixteen days, during which he was told several times he could not see anyone until he confessed. In neither Haynes v. State of Washington, supra, nor Davis v. State of North Carolina, supra, could the prisoner possibly entertain any hope of seeing an attorney until he confessed.

The petitioner's expectation that an attorney would be called for him is the point that distinquishes this case from Ledbetter v. Warden, Maryland Penitentiary, supra. There where the accused was refused permission to make a phone call from the jail, Judge Sobeloff said:

When Ledbetter was refused permission to make a phone call he knew full well that the police intended to hold him incommunicado and pursue their interrogations until they would bear fruit. *The crucial inquiry is the suspect's knowledge that he will continue to be kept incommunicado. The coercive influence cannot be measured by the number of hours Ledbetter was actually detained, but only by the effect upon him of the obvious intention of the police to persist in their secret inquisition without granting his request to communicate with the outer world.* The production of a co-suspect's implicating statement, coupled with the denial of access to the telephone, made it clear to Ledbetter that he could gain respite only by confirming the statement. (emphasis added)

■ Therefore, to conclude on this point, because of the petitioner's knowledge of his right to an attorney, plus the above-mentioned expectation that he would have an attorney, when coupled with the knowledge that he had the right to remain silent (as noted in part three (b)) the Court finds that the confession was given voluntarily and was therefore admissible evidence.

On this voluntariness question, this Court makes two additional points. One concerns information given by petitioner to the probation officer in the pre-sentence report and the other concerns the tardiness of petitioner's complaint about being held incommunicado. First, in an examination of the entire record in an effort to make an independent determination of the ultimate issue of voluntariness, as directed in Davis v. State of North Carolina, supra, 384 U.S. p. 742, 86 S.Ct. 1761 this Court notes that on page 6 of the pre-sentence report the probation officer reports that petitioner,

* * * stated that at first he did not intend to admit anything at all, but a few days before he changed his plea [sic] he notes that he began pray-

ing and he felt that the Lord wanted him to tell the truth and make a complete confession.

This part of the pre-sentence report was not at any time denied by the petitioner. That he was aware of it is clear from the record, because one of his court appointed lawyers testified as to a post-trial visit with petitioner where he said:

* * * we went back [to the Washington County jail] on March 12th, to take him a copy of the pre-sentence report, and discuss the pre-sentence report and ask him if he had any questions about it. We discussed it at length. (Tr. 53)

The Court is also impressed that petitioner did not complain of his detention incommunicado until he got to the penitentiary. Compare this with the situation in Miller v. Warden, 338 F.2d 201, at 204 (1964, Fourth Circuit) where the Court cited four complaints which the petitioner there had made prior to his trial as support for the consistency that he had been detained incommunicado. Judge Bell said:

At least two of these witnesses, [to whom petitioner complained] the two attorneys, ought to be considered reliable. This is not evidence adduced for the first time after a habeas petition; these statements were made prior to his trial and consistently reported by the witnesses.

In the instant case, attorneys Bondurant and Quillen testified at pages 44 and 51 of the habeas hearing that they had no recollection of the petitioner complaining about being coerced into giving a confession.

Third, part (d), the petitioner alleges that he was induced into signing the confession with a promise of a sentence of 8–12 years. (Tr. 6) At page 21 of the habeas hearing the commonwealth attorney is asked this question: "Was anything said about the extent of the punishment if a plea of guilty was entered, now I refer particularly to 8 to 12 years?" He answers as follows:

I don't remember those figures. He did ask me several times how much his punishment would be if he were convicted and I couldn't say exactly what I told him. I know that, I, at least I'm fairly sure that I advised him of the maximum and minimum punishment and told him that I couldn't make any promises, that nobody else could promise him anything. I did tell him that from my experience, as I indicated earlier, he was telling some things in the beginning that were obviously not true, and I did tell him that just from what I had seen that if a man who committed a crime came in and told the jury a lot of stories that were unbelievable, that he probably would get a more severe punishment than he would if he told the truth about it.

This is all the evidence on the point. Again mindful of the fact that the petitioner never registered any complaint on this point until he got to Richmond, and since his statement, which is contradicted as noted above, is the sole evidence supporting his contention, this Court holds that he has failed to establish by a preponderance of the evidence that he was induced into making the confession with promises of an 8–12 years sentence.

■ Fourth, the petitioner alleges that information of the death of Robert Porter was withheld from him until after he signed the confession. (Tr. 6) From the evidence on pages 6, 12, 18, 34, 35, 37 and 38 this Court believes that it is entirely possible that the petitioner was not told of Robert Porter's death until after he had signed the statement. However, it is not apparent that the petitioner was prejudiced in any way by this, even if it is true. He was tried for robbery and not for murder. The indictment for murder was not prosecuted. Petitioner could contend that he would not have voluntarily signed the confession to his part in the robbery if he had known of the death of the victim because of the greater punishment which he would probably receive for being a party to a robbery where a murder took place, but to carry this contention, he would have to show that he had actually been prejudiced by his confession. This would

involve mere speculation as to what the sentence would have been without the fact of the victim's death, all other facts being the same. This Court will not indulge in such speculation. Therefore, the Court finds no substance in this claim of the petitioner.

■ Fifth, the petitioner alleges that he was advised by the commonwealth attorney to waive his preliminary hearing; that he did so, without the benefit of counsel, and that this resulted in prejudice to him. In Virginia, a person arrested and charged with a felony is entitled to a preliminary hearing unless he waives such hearing in writing. Section 19.1–163.1, Code of Virginia 1950 as amended. The Court has examined the habeas record at page 42 and finds that the petitioner made an intelligent written waiver of the preliminary hearing. Furthermore, even if he had not made an intelligent waiver of it,

> * * * the requirement for such a hearing is procedural only, and not jurisdictional, and any defect in connection therewith must be raised before trial, or forever lost as a grounds of objection.

Snyder v. Commonwealth, 202 Va. 1009, 121 S.E.2d 452, 456 (1961).

■ As to petitioner's contention that he was not supplied with counsel at the time of the waiver of the preliminary hearing, it was said in Vess v. Peyton, 352 F.2d 324, 326 (Fourth Circuit 1965) that "the preliminary hearing in Virginia is not a critical stage of the proceedings * * *." Petitioner Gibson in the instant case was not prejudiced by the absence of counsel at this point because no substantial rights were forfeited.

Sixth, and last, the petitioner alleges that he was not effectively represented by counsel because the two court appointed attorneys failed to investigate and object to the facts surrounding his arrest, the search, and the confession, and further, because they did not call any witnesses on his behalf. The Court finds that the appointed counsel visited with the petitioner "at least six times" (Tr. 44) during the pre-trial period. This would seem on the face of the matter to be an adequate number of visits with the petitioner in which to gather all the information that petitioner had to give them. Additionally, there is no evidence from the record of conduct of the trial or from the verdict which would justify the inference that petitioner had not been effectively represented. The court appointed lawyers were confronted with a defendant charged with robbery. Their defendant had already confessed to such actions as would, under law, constitute robbery. There is every indication from the testimony which they gave at the habeas hearing and from the questions which they asked at trial that the two attorneys did an admirable job. The fact that no witnesses were called on behalf of the defendant does not constitute any negligence on the part of the counsel in light of the facts as they appeared at the state habeas hearing. There it was brought out in pages 57 through 58 that the defendant did not have any witnesses who could be of assistance to his defense.

The Court has examined the facts from the arrest through to the end of the state trial and it has considered the possible courses of action that counsel could have followed. The Court concludes that the petitioner was given good advice and counsel throughout the action.

■ The Court sees no merit in petitioner's contention that his representation was inadequate because he was not advised of his right of appeal. In Peyton v. Webb, 207 Va. 417, 149 S.E.2d 889 (Sept. 9, 1966), the Virginia Supreme Court of Appeals said that where a prisoner seeking habeas corpus had given the impression that he was well pleased with the outcome of his trial at the time of the conviction, neither the court nor counsel had a duty to advise the defendant of his right to appeal. The Court said this would invite groundless appeals. The record in the instant case shows no dissatisfaction of petitioner over coun-

sel's representation or over the verdict until the petition was filed over a year later.

The petitioner having thus failed to convince this Court that he is illegally imprisoned by reason of his various allegations, it is hereby adjudged and ordered that the petition for habeas corpus be dismissed and the writ denied.