Commonwealth *v.* McDermott, Appellant.

Argued March 8, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Kenneth D. Matthews,* for appellant.

*James W. Tracey, Jr.,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY HIRT, J., April 16, 1943:

Appellant, Joseph McDermott, was convicted on five indictments charging: conspiracy with other members of an election board, to violate the election laws; unlawfully inserting names in voters' certificates; making false return of votes; fraudulently registering votes on voting machines, and unlawfully certifying a return

of votes at a municipal election held on November 4, 1941.

Appellant's first contention is that the circumstantial evidence of his guilt does not rise to the required degree of proof and that he is entitled to a new trial on that ground. A reference to the testimony will demonstrate that the evidence is sufficient to support the convictions on all bills.

Appellant was judge of election in the Second Division of the 27th Ward in Philadelphia and had served in that capacity for three years. He had prior experience as a member of an election board as an inspector and was familiar with the requirements of the election laws. There were irregularities in the conduct of all of the defendants. Defendant Hollman was the minority inspector but did not serve (he appeared in the course of the day but remained only long enough to vote.) Nevertheless his name appears as inspector on the oath purporting to have been administered by appellant, and on all of the return sheets certifying to the result of the vote in the district. The signatures on the printed oath on all of the returns are not his. Anne Panetta, another defendant, acted as clerk and kept two numbered lists of voters as they appeared. She however served only until 9:30 in the morning when she left and did not return. Before leaving she signed all of the election return sheets in blank. There remained but three members of the election board; appellant, Pavelanaski and Kary, a machine inspector. Appellant did not move to fill the vacancies on the board.

There was also direct proof of wholesale fraud at the election in this division. Of 310 votes cast in the district the evidence is that more than 65 were fraudulent. The Commonwealth produced twenty-five witnesses who testified that they did not vote, and that their names signed on voters' certificates appearing in

the voting check list were not their signatures. Fifteen of them had moved from the district and were not qualified to vote. None of the defendants who testified denied that illegal votes were cast. They, however, and appellant among them, disclaimed responsibility for the fraud and all knowledge of how it was accomplished. The names of all of the defendants were signed to a certificate that 310 votes, including the fraudulent votes, were cast as indicated by the counting devices on the voting machines; their names also appear on the duplicate and general return sheets and statement to the same effect.

Defendant Kary testified that he assumed the duties of an inspector and took charge of the voting check list; that he received the voters' certificates as they were signed and, after approval, fastened them in numerical order in the voting check list. The testimony is that Pavelanaski compared the voters' signatures with the original registration record in the district register but Kary's initials appear on each of the voter's certificates attesting its approval as the genuine signature of a properly registered voter. Kary undoubtedly both received and approved voters' certificates. There were two voting machines in the voting place and appellant McDermott was in exclusive charge of both of them. Most of the twenty-five voters' certificates, shown to be spurious by the Commonwealth's witnesses, range from numbers 246 to 310 in the order of voting as indicated by the voting check list. The last bona fide voter's certificate was number 245.

With direct and positive evidence of the registration and certification of fraudulent votes, the circumstances are sufficient to convict appellant of conspiracy with other defendants and of the specific offenses charged in the indictments. The illegal votes for the most part were cast at the end of the day. The inference is inescapable that spurious voters' certificates were pre-

pared and illegal votes were recorded on the machines after the polls had closed. Appellant with Kary and Pavelanaski were then alone in the voting place; there is no evidence that watchers or others were present. The false voters' certificates and the signatures were not all written by the same person and some of the names were misspelled. There is intrinsic evidence, appearing by comparison, that the forged certificates were in the handwriting of three different persons. Even the initials "J.K." certifying approval were not all in the same handwriting on all of the certificates.

It is inconceivable upon any acceptable theory of defense that appellant did not know what was going on; he was the judge, with the duty of seeing to it that the election was conducted honestly and in accordance with the law. The voting place was small and appellant was at all times within ten feet of the other members of the board. The wholesale preparation of false voters' certificates could not have occurred without appellant's knowledge and his approval may be inferred from the circumstances. If three persons prepared the false certificates, appellant was one of them. Since he was in exclusive charge of the machines it is also a reasonable inference that appellant recorded the illegal votes on them. The guilt of the appellant on all of the charges was established beyond all reasonable doubt; the proofs were well within the rule of *Com. v. Marino*, 142 Pa. Superior Ct. 327, 16 A. 2d 314; *Com. v. Libonati*, 346 Pa. 504.

Appellant also contends that the trial judge failed to define adequately the various offenses charged in the indictment. Conspiracy was the only charge which called for definition and appellant concedes that, as to that, the charge of the court was entirely adequate; all of the other offenses are self-explanatory and self-defining. Cf. *Com. v. Yancer*, 125 Pa. Superior Ct. 352, 189 A. 684. They charged fraudulent acts in the con-

duct of the election in terms which anyone would recognize as unlawful. But the trial judge did not submit these charges on the indictments alone. In a careful charge the jury were instructed in detail as to the applicable requirements of the Election Code of June 3, 1937, P. L. 1333, 25 PS 2600 et seq., and, in detail, as to the duties of each of the election officers. Each of the specific offenses charged in the indictments is made a misdemeanor under the Code. The offenses other than conspiracy are of a class where description is the best if not the only adequate definition.

Of course, one of the invariable primary requisites is that the jury shall clearly understand the exact issues involved. But it is only where the issue is not clear that the failure of the court to define the offense constitutes fundamental error, in the absence of a specific request to so charge. *Com. v. Gold,* 123 Pa. Superior Ct. 128, 186 A. 208. On charges of misdemeanors explicit instructions as to the nature of the offenses are not always essential. *Com. v. Tracey,* 137 Pa. Superior Ct. 221, 8 A. 2d 622. In the present cases there could have been no misapprehension in the minds of any of the jurors as to the exact nature of the issues involved. Only a general exception was taken to the charge and there was no request for additional instructions.

The judgments of sentence are affirmed and it is ordered that defendant Joseph McDermott appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentences or any part of them which had not been performed at the time each appeal was made a supersedeas.