**UNITED STATES of America ex rel. Nathan MOORE, Relator-Appellant,**

v.

**Harold W. FOLLETTE, Warden, Greenhaven State Prison, Stormville, New York, Respondent-Appellee.**

**No. 119, Docket 31588.**

United States Court of Appeals Second Circuit.

Argued Oct. 7, 1968.

Decided Jan. 19, 1970.

Certiorari Denied June 15, 1970.

See 90 S.Ct. 2180.

---

Michael E. Geltner, New York City, for relator-appellant.

Lillian Z. Cohen, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Frank S. Hogan, Dist. Atty., New York County (Michael R. Juviler and Michael R. Stack, Asst. Dist. Attys., of counsel), submitted brief as amicus curiae.

Before FRIENDLY, ANDERSON and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

Nathan Moore was convicted of the felony murder of Mayme Wright in 1957 after a jury trial in the New York Court of General Sessions; in accordance with the jury's recommendation he was given a life sentence. On appeal he contended that a transcript of a confession, received on defense counsel's explicit statement of no objection after certain passages had been deleted, was involuntary because taken while he was experiencing withdrawal symptoms. A detective had testified to an earlier oral confession by Moore, not claimed to have been involuntary, to almost precisely the same effect. The Appellate Division affirmed without opinion, 8 A.D.2d 599, 185 N.Y.S.2d 222 (1st Dept. 1959), leave to appeal to the Court of Appeals was denied, and the Supreme Court refused certiorari, Moore v. New York, 365 U.S. 854, 81 S.Ct. 821, 5 L.Ed.2d 818 (1961).

In 1965 Judge Brennan in the District Court for the Northern District of New York denied an application for habeas corpus without prejudice to its renewal in the event of a refusal by the state courts to take appropriate action under the principle then recently enunciated in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Moore applied to the New York courts for a hearing to determine the voluntariness of his confession as authorized by People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965). A state judge initially directed a hearing but later recalled his decision on the ground that there had been no objection to receipt of the confession and that the question of voluntariness had not been submitted to the jury by the court in its charge. See People v. Huntley, *supra*, 15 N.Y.2d at 77, 255 N.Y.S.2d at 843, 204 N.E.2d at 183. The Appellate Division affirmed the order denying a hearing without opinion, 25 A.D.2d 955, 270 N.Y.S.2d 378 (1st Dept. 1966), and leave to appeal to the Court of Appeals was denied.

Moore reapplied for federal habeas corpus, this time in the Southern District of New York. He alleged, as he had previously done in the state courts, that he was a narcotics addict and that his transcribed confession was given while he was experiencing withdrawal symptoms. Judge Cooper denied the application without taking testimony. He held that "there was a deliberate tactical decision by defendant through counsel not to object to the confession," as evidenced by counsel's having obtained the prosecutor's consent to deletions and the express statement of no objection; that "defendant has not alleged he did not participate in counsel's decision," and

that there was thus "a deliberate by-passing of state remedies within the meaning of Fay v. Noia," 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Moore then addressed a letter to the district court. This said in part:

"Though it be futile, I can sincerely state that not one of my counsel at trial, advised me as to my rights to a preliminary hearing as to involuntary confession nor any of the intricacies governing the admissibility of confessions, also, they were made aware of witnesses that could testify to the circumstances under which my confession was taken, but for some reason unknown to me they were never called and even now I have affidavits from same witnesses."

Treating the letter as a motion for reargument and a petition for a certificate of probable cause, the judge granted both motions but again denied the writ, stating "Even assuming the facts now alleged by petitioner are true, we adhere to our initial disposition."

The appeal from Judge Cooper's order was argued to us shortly after United States ex rel. Vanderhorst v. LaVallee, 2 Cir., 417 F.2d 411, had been argued to a panel on which Judge Anderson also sat. We deferred decision pending the determination of that appeal, which was ultimately heard by the court *in banc* and decided on October 10, 1969, Id. at 411. Opinions then prepared by this panel and circulated to the full court elicited a considerable difference of opinion with respect to whether Moore was entitled to any evidentiary hearing concerning his second confession and, if so, whether this should be on voluntariness, on deliberate by-pass, or on both. Further consideration has led the panel to conclude that it is unnecessary to decide these difficult questions since any error in admitting the second confession would have been harmless.

We take the facts developed at the state trial as stated in the petition for habeas corpus itself:

Moore and Elizabeth McCormick, posing as Mr. and Mrs. McCormick, had rented a basement apartment in a brownstone house owned by the decedent, Mayme Wright, who lived upstairs. Charles Bland, who lived next door to the landlady, testified that about 11 P.M. on May 4, 1956, Elizabeth McCormick knocked on his door and asked where the landlady's room was located. Having informed her, he heard Elizabeth knock there and say "Somebody down stairs wants to see you," and Mayme respond "Wait a minute." Three days later he found Mayme's room in disarray and her dead body on a bed in the basement apartment. The latter facts were corroborated by Susie Popkins, a friend of Mayme Wright, and by Patrolman Murray. There was a cord around Mayme's left arm. An assistant medical examiner testified that death had been caused by strangulation and fracture of the larynx.

Detective Lalima apprehended Moore and McCormick at 4 A.M. on May 9 at a hotel where they were registered as Mr. and Mrs. Larry Hill. A search of Moore's trousers produced a black wallet containing $885. Later Lalima confronted Moore with other items of stolen property alleged to have been recovered from his mother's home.

Moore then made an oral statement to the detective, the voluntary character of which has never been challenged. He recounted that he and Elizabeth had discussed the possibility of burglarizing Mayme's room, that they had decided to involve one Eugene Topping who had a gun, that they had determined to lure Mayme to their apartment by telling her that the bathroom was overrunning, that Moore put a "yoke" around Mayme, and that Topping then emerged from the bathroom. Moore and McCormick went up to Mayme's room to accomplish the burglary. When they returned with the loot, they found that Topping had untied her and she started to scream. Moore put an arm lock around her and tied a piece of material around her mouth.

**928**

Elizabeth was sent to get a taxi. When she found one, Moore and Topping joined her, leaving Mayme unconscious and gurgling. After stopping at Topping's house where they examined the stolen property, Moore and McCormick went to the hotel. Moore admitted that the money found in his possession, as well as costume jewelry and a hat box found at his mother's home, had been taken from Mayme's room.

Almost all the elements of this confession were confirmed by Elizabeth McCormick. She testified that she and Moore planned to rob Mayme, whom they had noticed wearing jewelry, in order to get money needed because of Elizabeth's pregnancy. Elizabeth admitted going upstairs, knocking on a wrong door (Bland's), and telling Mayme to come down because the bathroom was running over. She confirmed Moore's having tied Mayme up, their going upstairs to commit the burglary, and their coming down with stolen property and finding Mayme untied. While she denied having seen Moore tie Mayme again she admitted that, as she was leaving to get the taxicab, she saw Topping pull Mayme down to the bed. She also testified that when Moore and Topping joined her in the cab, she asked "Did you out her?" and received an affirmative answer. She testified further in regard to the division of the loot.

While the case where admission of an improperly obtained confession can be considered harmless error is exceedingly rare, this is one. We have the first confession, the testimony of McCormick corroborating it and covering every element of the crime, the partial confirmation by Bland, and the finding of the stolen property in Moore's possession. The only theories of defense even suggested at the trial were that Mayme Wright suffered from a coronary condition which was triggered by the violence practiced upon her, and that she might have caused her own strangulation by attempting to free herself from her bonds. But these were no defenses at all. If the jury believed the consistent testimony of Moore's paramour and of Bland and Detective Lalima's testimony concerning the first confession, and there was hardly a suggestion why they should not, conviction was inevitable. Hence even if we were to assume *arguendo* that the point with respect to the voluntariness of the second confession survived the agreement between Moore's counsel and the prosecutor and that on a *Huntley* hearing the confession would be ruled involuntary, we are convinced beyond a reasonable doubt that admission of the confession was harmless error. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

The court is indebted to Michael E. Geltner, Esq., assigned counsel, for an effective presentation on Moore's behalf.

Affirmed.