**UNITED STATES of America ex rel. Jose BURGOS, Petitioner-Appellant,**

v.

**Harold W. FOLLETTE, Warden, Green Haven Prison, Stormville, New York 12582, Respondent-Appellee.**

No. 794, Docket 34279.

United States Court of Appeals, Second Circuit.

Argued May 4, 1971.

Decided Sept. 3, 1971.

Lumbard, Circuit Judge, dissented and filed opinion.

Milton J. Schubin, New York City (Kaye, Scholer, Fierman, Hays & Handler, New York City, Robert F. Fink, New York City, of counsel), for petitioner-appellant.

Mortimer Sattler, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Before LUMBARD, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from the United States District Court for the Southern District of New York, Edmund L. Palmieri, Judge, from the dismissal without a hearing of a petition for a writ of habeas corpus. We find error and remand for hearing.

Petitioner-appellant, Jose Burgos, was convicted in the former Court of General Sessions of New York County in May, 1962 of murder in the first degree and on June 22, 1962 was sentenced to life imprisonment upon the recommendation of the jury. No direct appeal was taken from the conviction.

In September, 1965 Burgos filed a writ of error *coram nobis* in the state courts and requested a *Huntley* hearing to determine the voluntariness of his confession which had been used against him at trial. That application was de-

nied, as was a similar petition filed in 1968. Both were considered by the Appellate Division, First Department, and were likewise denied without opinion. [People v. Burgos, 31 A.2d 601, 295 N.Y. S.2d 407 (1968).] Leave to appeal to the New York Court of Appeals was denied on February 12, 1969. In June, 1969 this petition seeking a writ of habeas corpus was filed *pro se* in the District Court.

The crime for which the appellant was convicted was a particularly brutal one. Early on the evening of May 29, 1961, the appellant, who was then sixteen years of age, and three companions followed two men into the elevator of an apartment house on New York's lower east side. One of the men alighted from the elevator leaving the four boys alone with the other, one Harry Heisler. The appellant then pulled out a rifle from inside his trousers, pointed it at Heisler and said "It's a hold-up." A struggle ensued and Heisler was shot in the abdomen with Burgo's gun. There was some dispute as to whether the shot was fired intentionally or accidentally. Heisler died at Bellevue Hospital later that night.

Shortly thereafter the police arrested a number of young men who lived in the neighborhood including the appellant. According to Burgos' petition, he was taken to the police station and questioned for some seven and one half hours by relays of detectives, he was told that he would be denied food and water until he made a statement, he was refused permission to contact his family, and he was not informed of his right to remain silent or of his right to counsel. In addition, the record discloses that he was only 16 years old at the time and spoke only broken English. He was attending a special school for "socially maladjusted and emotionally disturbed children." Although he was designated as being in the eighth grade, he read on a third grade level. A written statement was secured from the appellant by an assistant district attorney at 2:58 a. m. Interestingly, in spite of appellant's language difficulty, the statement was in all but impeccable English. This statement was later introduced over the objections of defense counsel at the trial.[1]

It is, of course, clear that had Burgos' trial taken place after October 10, 1966, the date of the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the failure of the police to advise Burgos of his right to remain silent and to the presence of counsel would have been sufficient, by itself, to label his confession involuntary. *Miranda* was not, however, written on a blank slate. For many

---

1. The state contends that appellant's counsel was not sufficiently specific in objecting to the introduction of the confession since he did not use the term "voluntary" in raising his objections. The following colloquy took place at the trial:

Mr. Suarez: Your Honor, at this time I am going to object to any conversation between the lieutenant and Burgos unless we have indication here that the defendant was warned by the lieutenant that any statements that he would make would be used against him.

Mr. Loguen: Well, there is certainly no requirement of that by law, if your Honor pleases.

The Court: The objection is overruled.

Mr. Suarez: Well, your Honor, I have another objection to press on this. Now inasmuch as the defendant at the time of the commission of the alleged crime was a minor of the age of 16 and he was not aware of this state [sic], and inasmuch as a minor he could not enter into any contractual obligation or get married or do anything that an adult is permitted to do because of the interest that the state holds in mind, I feel that other precautions should have been used and carried out before extracting admissions from this defendant and friends or attorney or relative should have been present to advise the defendant prior to the making of any statement.

The Court: The objection is overruled.

To contend that there was an intentional waiver of the involuntariness claim merely because counsel failed to use the magic word "voluntary" is, in light of the above, mere sophistry.

years the federal courts had examined the "totality of the circumstances" presented in each individual case where a claim of coercion was raised to determine whether due process standards were violated.[2] If we examine those pre-*Miranda* cases where the courts have found a defendant's confession to have been coerced, we note that several of the factors present here have been given significant weight in prior cases in reaching a finding of involuntariness. In Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948) and more recently in Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), we were instructed by the Supreme Court to take particular care when dealing with the confession of a youthful offender since it is much more likely that his will would be overborne by law enforcement officials.[3] The courts have also looked with strong disfavor on refusals to permit the accused to communicate with family or friends. [Cf. Gallegos v. Nebraska, 342 U.S. 55, 65, 72 S.Ct. 141, 96 L.Ed. 86 (1951); Reck v. Pate, 367 U.S. 433, 441, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961).] In Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963), the Court found that holding a defendant incommunicado until he made an incriminating statement was, by itself, sufficient to invalidate his confession.

The petitioner at first resisted making a written statement and gave in only after consistent denials of his requests to call his wife, and the conditioning of such outside contact upon his accession to police demands. Confronted with the express threat of incommunicado detention and induced by the promise of communication with and access to family Haynes understandably chose to make and sign the damning written statement; given the unfair and inherently coercive context in which made, that choice cannot be said to be the voluntary product of a free and unconstrained will, as required by the Fourteenth Amendment. 373 U.S. at 514, 83 S.Ct. at 1343.

Similarly, Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) and Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), reemphasized in denying retroactivity to *Miranda* that the absence of the *Miranda* warnings in pre-1966 convictions would nevertheless be a "significant factor in considering the voluntariness of the statements later made." 384 U.S. at 740,[4] 86 S.Ct. at 1764.

2. Cf., e. g., Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957); Watts v. Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949); Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944); Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954).

3. "He [the defendant] cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions. * * * Without some adult protection against this inequality, a 14 year-old boy would not be able to know, let alone assert, such constitutional rights as he had. To allow this conviction to stand would, in effect, be to treat him as if he had no constitutional rights." 370 U.S. at 54–55, 82 S.Ct. at 1213.

4. Haynes v. Washington (*supra*), 373 U.S. at 510–511, 83 S.Ct. 1336; Culombe v. Connecticut, 367 U.S. 568, 610, 81 S.Ct.

1860, 6 L.Ed.2d 1037 (1961); Turner v. Pennsylvania, 338 U.S. 62, 64, 69 S.Ct. 1352, 93 L.Ed. 1810 (1949); Gallegos v. Colorado, 370 U.S. 49, 54–55, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1966). In Rogers v. Richmond, 365 U.S. 534, 540–541, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961) the Court noted: "Our decisions under [the Due Process Clause of the Fourteenth Amendment] have made clear that convictions following the admission into evidence of confessions which are involuntary, i. e., the product of coercion, either physical or psychological, cannot stand. This is not so because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth."

As the appellant points out, the present case is factually quite similar to the situation presented to the Fourth Circuit sitting *en banc* in Ledbetter v. Warden, 368 F.2d 490 (1966), cert. denied, 386 U.S. 971, 87 S.Ct. 1162, 18 L.Ed.2d 130 (1967). There the defendant was 19 years old and had completed the eighth grade. His first encounter with law enforcement officials was when he was arrested after having been implicated in a murder investigation. He was placed in a small room at the police station and was denied the opportunity to communicate with his family. He was not advised of his right to remain silent or to have the assistance of counsel. Later that evening, when confronted by the confession of a co-defendant, Ledbetter signed a written statement acknowledging his participation in the crime. The Court of Appeals noted:

> "This youth was alone in the hands of the police, and his requests to contact his family were refused. He was not told of his right to maintain silence, or that his statements might be used against him. And he was not informed of his right to an attorney. Considered against the background of Ledbetter's age and education we think the District Court correctly found that the confessions were not voluntarily given." 368 F.2d at 492.

■ If anything, the facts alleged in the present case are more egregious than those in *Ledbetter*. Here we are concerned with a boy of 16 (not 19) who had also completed the eighth grade but read on a third grade level and spoke little English, who also asked to call his family and was refused, who additionally was denied food and water until he made a statement, who had his mother turned away, and who likewise was not advised of his constitutional rights. If these circumstances are established at a hearing, there is no doubt that the appellant's confession was fatally tainted.

We therefore remand the case to the District Court. If in the course of a hearing the appellant is able to substantiate his allegations as to the circumstances surrounding his interrogation and confession, then the writ should issue.

LUMBARD, Circuit Judge:

I dissent.

The record does not support the claim that objection was made at trial to the admission of the confession on the ground that it was not voluntary. The record does show that no request was made to charge the jury on this subject.

Appellant was represented at trial by an experienced counsel, who had been assigned by the state courts to defend numerous cases of this nature. The reason for counsel's failure to make specific objection was because there was little or nothing to support any claim that the confession was involuntary.

Burgos was picked up with two of his confederates about 7:15 p. m. on the day following the killing of Harry Heisler on May 29, 1962. After a brief period of questioning, shortly after 8:00 p. m. when Lieutenant Owen asked Burgos "Did you do it?" Burgos responded "Well I did it. I guess I'll get the chair." Invited to explain whether it was an accident, Burgos replied "It was no accident. A friend of mine needed money. We followed two men. I popped him on the elevator." Burgos then gave further details and said to another confederate, Hernandez, who had been brought into the room "tell them where the guns are." The guns were found within a few minutes, the questioning continued, and a few hours later after the arrival of an Assistant District Attorney the statement of appellant was taken down stenographically. While the detectives who testified to these events were cross-examined, counsel made no attempt to show that Burgos had been ill-treated or coerced in any way.

Contrary to the facts stated above, the petitioner now claims that "he was taken to the police station and questioned for seven and one half hours by relays of

detectives, he was told that he would be denied food and water until he made a statement, he was refused permission to contact his family, and he was not informed of his right to remain silent or his right to counsel."

On such a record, Judge Palmieri correctly denied the petition, without a hearing.

In view of the majority's emphasis on the claims of the petitioner, I think I should point out that they appear to have been drafted in the light of recent court opinions rather than on what was claimed or proven at the time of trial.

I would affirm the order of the district court.