**Hon. Vincent A. MANCUSI, Warden, Attica State Prison, Respondent-Appellant,**

v.

**UNITED STATES ex rel. Robert CLAYTON, Petitioner-Appellee.**

**No. 218, Docket 71–1696.**

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 1971.

Decided Jan. 17, 1972.

Samuel A. Hirshowitz, First Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of State of New York, Amy Juviler, Asst. Atty. Gen., of counsel), for respondent-appellant.

Frederic Block, Centereach, N. Y., for petitioner-appellee.

Before WATERMAN and SMITH, Circuit Judges, and ZAMPANO,* District Judge.

ZAMPANO, District Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York, John R. Bartels, J., granting petitioner's writ of *habeas corpus* and directing his release unless he is retried by the state.

Petitioner, Robert Clayton, was convicted of second degree murder on February 25, 1953, after a trial in which his confession was introduced as evidence. He did not appeal his conviction, but in 1965 sought relief in a *coram nobis* hearing in the County Court, Suffolk County, asserting that his confession was involuntary. That court denied relief on the ground that the confession was a voluntary one. The Appellate Division, Second Department, 28 A.D.2d 543, 279 N.Y.S.2d 605, and the Court of Appeals affirmed, 22 N.Y.2d 841, 293 N.Y.S.2d 104, 39 N.E.2d 734, whereupon petitioner unsuccessfully sought *certiorari* in the United States Supreme Court, 394 U.S. 909, 89 S.Ct. 1018, 22 L.Ed.2d 219. Petitioner then commenced this action for a writ of *habeas corpus* in the District Court which held an extensive hearing and granted the writ based upon its finding that the confession was involuntary.

The facts surrounding the making of the confession are set forth in Judge Bartels' comprehensive opinion below, 326 F.Supp. 1366 (E.D.N.Y.1971); therefore only a brief summary is necessary. Petitioner, a semiliterate itinerant farm worker, was taken into custody along with 11 others at about three o'clock in the afternoon of November 3, 1952, as part of an investigation into a homicide which had occurred the previous day on the farm where he was working. Except for repeated periods of questioning in another room by the police, he was confined in a small and practically bare room with the others

throughout the night and the next day. On November 4th a co-worker implicated petitioner in the murder after first having given a false confession himself and that evening petitioner was "arraigned" as a "material witness." At no time was petitioner informed of his rights. Thereafter he was isolated from the others who were taken into custody with him, and he alternated between interrogation sessions with the police and confinement in a small cell with only a flat board for sleeping. The record is not clear as to whether, and how adequately, petitioner slept and ate. He finally confessed to the murder late in the evening of November 5th, approximately 55 hours after having been taken into custody. The interrogation was finally concluded at approximately three o'clock in the morning of the next day, November 6th, and later that day he was arraigned as a defendant.

The District Court relied on six factors to support its conclusion that the confession, under all the circumstances, was involuntarily made: (1) the failure to advise petitioner, an indigent and uneducated suspect, of his rights to counsel and to remain silent; (2) the "sham" arraignment as a material witness for the purpose of retaining police dominance over petitioner; (3) the unreasonable delay in arraignment as a defendant for over 60 hours after having been taken into custody; (4) doubt that petitioner had adequate food and sleep; (5) persistent interrogation by a skilled team of investigators; and (6) continual questioning over a period of two and a half days.

■ In reaching its conclusion the District Court applied the test, whether the confession was voluntary under "the totality of the circumstances," which is conceded by appellant to be the correct legal standard. See, *e.g.*, Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). Appellant nevertheless disputes the validity of the factors on which the District Court relied,

---

* United States District Judge for the District of Connecticut, sitting by designation.

attacking each in turn as being insufficient in itself to show coercion. While appellant may be correct were each factor considered in isolation, such a position is only peripherally relevant. Because of the inherent complexity of a judgment which must depend upon the simultaneous weighing of various circumstances, the process of determining voluntariness involves more than "a mere color-matching of cases," *Beecher v. Alabama,* 389 U.S. 35, 38, 88 S.St. 189, 191, 19 L.Ed.2d 35 (1967). Rather, the touchstone in evaluating all the factors surrounding the making of a confession is the principle that the confession is voluntary if it is the product of an essentially free and unconstrained choice and involuntary if the product of a will overborne. *Lynumn v. Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963), *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

■ It seems clear that petitioner's persistent denials of guilt throughout two days of constant police questioning and despite a direct accusation by a co-worker demonstrate that it was his will not to confess. The appellant suggests that it was the petitioner's free choice to change his mind because he learned that a bar owner had identified the petitioner's girlfriend as the person who accompanied a "man who cashed a $100 bill at her establishment shortly after the homicide." This rather inconclusive piece of evidence, it is argued, was the catalyst which stimulated the petitioner's "normal psychological drive to confess." Judge Bartels found, and we agree, that this bit of information would hardly have prompted the petitioner to confess. Rather, it is apparent that the petitioner's lack of education and knowledge of his rights coupled with the circumstances of prolonged custody and repeated periods of questioning by trained interrogators convinced the petitioner that "the police wanted answers and were determined to get them." *Culombe, supra,* at 625, 81 S. Ct. at 1891. There is little doubt that petitioner was under tremendous psychological strain and physical discomfort. The only way obvious to him to reduce these coercive influences was to do and say what the police demanded of him. Under these circumstances, we conclude that the findings of the District Court that the petitioner's will was eroded and that the confession was a result of a pattern of police dominance and coercion were not erroneous.

■ Appellant further argues, independently of the question of the voluntariness *vel non* of the confession, that the judgment of the District Court should be reversed because it exceeded its authority when it held a hearing and redetermined issues previously decided by the state courts. However, in applying the legal standard of voluntariness to the historical facts surrounding the confession, the determination which results is not a conclusion of fact but one of law, or at most a mixture of fact and law. See *Jackson v. Denno,* 378 U.S. 368, 391, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *United States ex rel. Burns v. LaVallee,* 436 F.2d 1352, 1356 (2 Cir. 1970), cert. denied, 402 U.S. 1012, 91 S. Ct. 2190, 29 L.Ed.2d 436 (1971). Therefore the District Court properly redetermined the federal constitutional question for itself. *Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Moreover, it was proper under the facts of this case for the District Court to hold an evidentiary hearing. It was by no means clear that the County Court applied the correct constitutional standard in ruling on the voluntariness of the confession. That court excluded evidence on whether petitioner was advised of his rights on the ground that it was irrelevant, although the lack of such advice was a circumstance which had some bearing on the issue of voluntariness. It made no findings with respect to the propriety of the arraignment of petitioner as a material witness and the delay in arraignment as a suspect until after he had confessed, factors which likewise must weigh in the balance. Finally, the Appellate Division in affirm-

ing the County Court relied on certain principles of nonretroactivity which are not relevant in making a judgment under "the totality of the circumstances." Davis v. North Carolina, 384 U.S. 737, 740, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). Because it was not clear that the County Court applied the correct standard, and because its findings of fact were, as the District Court characterized them, "skeletal," it was proper to hold an evidentiary hearing rather than attempting to reconstruct the facts from the state court record. Townsend v. Sain, *supra*, 372 U.S. at 314, 83 S.Ct. 745; United States ex rel. Liss v. Mancusi, 427 F.2d 225, 229 (2 Cir. 1970). The District Court, having found that "a more detailed exploration of the underlying facts was necessary," fully complied with the requirements of 28 U.S.C. § 2254(d).

Accordingly, the judgment of the District Court is affirmed.