**UNITED STATES of America ex rel. Samuel MONTGOMERY, Petitioner,**

v.

**Hon. Vincent R. MANCUSI, Superintendent, Attica Correctional Facility, Stormville, New York, Respondent.**

No. 71 Civ. 3819.

United States District Court,
S. D. New York.

Feb. 7, 1972.

Robert Kasanof, Legal Aid Society, New York City, for petitioner; Julia P. Heit, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for respondent by Joel Lewittes, Iris A. Steel, Asst. Attys. Gen., of counsel.

## OPINION

BONSAL, District Judge.

Petitioner, Samuel Montgomery, presently incarcerated in the New York State Correctional Facility at Attica, New York, seeks a writ of habeas corpus releasing him from confinement on the ground that certain statements taken from him following his arrest, which were used at his murder trial, were involuntary and taken in violation of his Federal constitutional rights.

On August 2, 1957 at about 11:00 P.M. on Prospect Ave. in the Bronx, petitioner, Russell Corley and Robert May got into an argument with George Marshall and Richard Vaughn, two youths they had never seen before. The argument accelerated into a street fight and culminated in the fatal stabbing of Marshall. At about 2:00 A.M. on August 3, 1957, petitioner's sixteenth birthday, petitioner and Corley were taken into

custody and interrogated at the 42nd Police Precinct about the stabbing of Marshall. Later that morning, at about 6:00 A.M., May was also taken into custody and interrogated. All three youths were indicted for first degree murder, and on November 16, 1957, after a jury trial, petitioner and May were convicted of second degree murder and Corley was acquitted. On December 30, 1957, petitioner and May were sentenced to a prison term of 25 years to life. May appealed, and the Appellate Division holding that the evidence against him was insufficient to establish he had formed an intent to kill, reduced the crime of which May was convicted to manslaughter in the second degree and reduced May's sentence from 25 years to life, to 7½ years to 15 years. People v. May, 9 A.D.2d 508, 195 N.Y.S.2d 792 (1st Dept. 1960). Petitioner did not appeal his conviction following trial.

After the denial of a coram nobis petition in the State courts, and the denial of a habeas corpus petition in this court, on June 20, 1966 petitioner was afforded a *Huntley* hearing in New York Supreme Court, Bronx County, before Judge McCaffrey, the judge who presided at his trial. By opinion dated June 29, 1966, Judge McCaffrey held that "the admissions of defendant introduced into evidence at the trial were voluntarily made by the defendant." Judge McCaffrey's decision was affirmed without opinion by the Appellate Division, 30 A.D.2d 644 (1st Dept. 1968), and leave to appeal to the Court of Appeals was denied on June 19, 1968. On June 20, 1969, pursuant to People v. Montgomery, 24 N.Y.2d 130, 299 N.Y.S.2d 156, 247 N.E.2d 130 (1969), petitioner was resentenced in order to afford him the right to appeal his conviction. The Appellate Division affirmed his conviction without opinion, 35 A.D.2d 782 (1st Dept. 1970), and on October 30, 1970 petitioner was denied leave to appeal to the New York Court of Appeals.

Both petitioner and respondent agree that in view of the *Huntley* hearing, no hearing is required in this proceeding.

Petitioner contends, and respondent denies, that the evidence at the trial and the *Huntley* hearing establish that his statements were involuntarily made as a matter of law.

In issue are petitioner's statements to Detective McVeigh, the officer in charge of the investigation, and Assistant District Attorney Scheer, which statement was transcribed by a stenographer. At the trial, Detective McVeigh testified that petitioner had said that he stuck his knife between Marshall's shoulders and that before the incident he told May that he had his knife and was ready to use it. Petitioner's statement to Assistant District Attorney Scheer was similar to his statement to Detective McVeigh, and was read at the trial by the stenographer who had transcribed it.

Judge McCaffrey's rejection of petitioner's claim resolved all conflicts in testimony bearing on the claim against petitioner. Culombe v. Connecticut, 367 U.S. 568, 604, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). Therefore, this court must apply the legal standard of voluntariness to the uncontradicted historical facts and determine whether they establish that petitioner's statements were coerced or voluntary. Mancusi v. United States ex rel. Clayton, 454 F.2d 454 (2d Cir. January 17, 1972); United States ex rel. Burns v. LaVallee, 436 F.2d 1352, 1356 (2d Cir. 1970), cert. denied, 402 U.S. 1012, 91 S.Ct. 2190, 29 L.Ed.2d 436 (1971).

Judge McCaffrey rejected petitioner's testimony that he was beaten or threatened, that he was told he would not be fed, that he was told the District Attorney could not prosecute him because of his age, and that Assistant District Attorney Scheer pointed petitioner's hand at the alleged murder weapon, petitioner's knife, while newspaper photographers took pictures.

A review of the record of the trial and of the *Huntley* hearing indicates that:

At about 2:00 A.M. on August 3, 1957, petitioner and Corley were

brought to the 42nd Precinct station-house in the Bronx, where they were placed in separate interrogation rooms. Detective McVeigh, the officer in charge of the investigation, questioned petitioner six or eight times between shortly after 2:00 A.M. and 6:00 to 6:30 A.M. Because of his failure to take notes, McVeigh could not recall the length of each questioning or the exact time they occurred. Shortly after the questioning began, McVeigh had Vaughn, who had been with Marshall when the street fight began, identify petitioner through the door of the interrogation room.

McVeigh testified both at the trial and the hearing that he alternated between questioning Corley and petitioner, and that when he was with Corley petitioner was left with other police officers, whom McVeigh assumed spoke with petitioner. McVeigh testified that at first petitioner denied being in any altercation, but at about 5:00 A.M., after Corley had made a statement, petitioner admitted that he struck Marshall.

Petitioner was questioned by Assistant District Attorney Scheer from about 9:15 A.M. to 10:00 A.M., with the last twenty minutes of the interrogation being transcribed by a stenographer. During this interrogation, Vaughn was brought into the interrogation room for a face-to-face confrontation with petitioner. Following this interrogation, newspaper photographers were permitted to take petitioner's picture. Petitioner was not booked until 12:25 P.M. on August 3, 1957 and not arraigned until the following day, more than 30 hours after he was taken into custody.

Petitioner was not told he had a right to remain silent or that he had a right to have an attorney present. Petitioner testified that he had asked to see his mother; however, the detectives testified that they did not recall such a request. In any event, the police did not summon a member of petitioner's family or an adult friend prior to his arraignment.

As the court noted in Davis v. North Carolina, 384 U.S. 737, 739, 86 S.Ct. 1761, 1763, 16 L.Ed.2d 895 (1966):

"We are not called upon in this proceeding to pass on the guilt or innocence of the petitioner of the atrocious crime that was committed. Nor are we called upon to determine whether the confessions obtained are true or false. Rogers v. Richmond, 365 U.S. 534 [81 S.Ct. 735, 5 L.Ed.2d 760] (1961)."

▉ The test to be applied is whether the confession was voluntary under "the totality of the circumstances." Under this test, a confession may be involuntary even though each of the circumstances considered is alone insufficient to show coercion.

▉ Since petitioner's statements were made prior to the Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the failure to advise petitioner of his right to remain silent and to have counsel present at his interrogation is not determinative on the issue of voluntariness. However, the failure to advise him of these rights "is a significant factor in considering the voluntariness of statements later made." Davis v. North Carolina, *supra,* 384 U.S. at 740, 86 S.Ct. at 1764.

▉ The petitioner's youth and the fact that the police held him incommunicado throughout the interrogation and until after he was arraigned are also significant factors to be considered in determining whether petitioner's statements were voluntary. In United States ex rel. Burgos v. Follette, 448 F.2d 130, 132 (2d Cir. 1971), the court said:

"In Haley v. Ohio, 332 U.S. 596 [68 S.Ct. 302, 92 L.Ed. 224] (1948) and more recently in Gallegos v. Colorado, 370 U.S. 49 [82 S.Ct. 1209, 8 L.Ed.2d 325] (1962), we were instructed by the Supreme Court to take particular care when dealing with the

confession of a youthful offender since it is much more likely that his will would be overborne by law enforcement officials.[3] The courts have also looked with strong disfavor on refusals to permit the accused to communicate with family or friends. [Cf. Gallegos v. Nebraska, 342 U.S. 55, 65 [72 S.Ct. 141, 96 L.Ed. 86] (1951); Reck v. Pate, 367 U.S. 433, 441 [81 S.Ct. 1541, 6 L.Ed.2d 948] (1961).] In Haynes v. Washington, 373 U.S. 503 [83 S.Ct. 1336, 10 L.Ed.2d 513] (1963), the Court found that holding a defendant incommunicado until he made an incriminating statement was, by itself, sufficient to invalidate his confession.

"3. 'He [the defendant] cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions. . . . Without some adult protection against this inequality, a 14 year-old boy would not be able to know, let alone assert, such constitutional rights as he had. To allow this conviction to stand would, in effect, be to treat him as if he had no constitutional rights.' 370 U.S. at 54–55 [83 S.Ct. at 1213]."

In Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), a fifteen-year-old murder suspect was questioned from about midnight until 5:00 A.M. when he signed a written confession. Haley, like petitioner, was neither advised of his right to counsel or afforded the presence of relative or adult friend during his interrogation. Newspaper photographers were allowed to take Haley's picture after he confessed, and there was a lengthy period between his being taken into custody and his arraignment during which period he was held incommunicado. Unlike petitioner, Haley signed a question and answer statement which was prefaced by a waiver of the right to remain silent. In reversing Haley's conviction, Mr. Justice Douglas said:

"What transpired would make us pause for careful inquiry if a mature man were involved. And when, as here, a mere child—an easy victim of the law—is before us, special care in scrutinizing the record must be used.

\* \* \* \* \* \*

"The age of petitioner, the hours when he was grilled, the duration of his quizzing, the fact that he had no friend or counsel to advise him, the callous attitude of the police towards his rights combine to convince us that this was a confession wrung from a child by means which the law should not sanction." 332 U.S. at 599–601, 68 S.Ct. at 303–304.

Respondent would distinguish the instant case from *Haley* because Haley was questioned by relays of police officers and petitioner was not. In view of Detective McVeigh's testimony that when he was not questioning the petitioner there were other police officers with petitioner, whom he assumed were speaking with petitioner, the lack of relay questioning does not appear to be crucial. As was recently noted in Mancusi v. United States ex rel. Clayton, *supra,* "the process of determining voluntariness involves more than 'a mere color-matching of cases' . . . "

The instant case has as its starting point "the known commission of a crime, followed by the taking into custody and extensive grilling of the suspect by the police." Michaud v. Robbins, 424 F.2d 971, 973 (1st Cir. 1970). See Haley v. Ohio, *supra;* Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); United States ex rel. Burgos v. Follette, *supra.* In view of the identification of petitioner by Vaughn shortly after Detective McVeigh began the interrogation, it would appear "that the police interrogation was essentially incriminatory rather than merely investigatory in nature." United States ex rel. Castro v. LaVallee, 282 F.Supp. 718, 724 (S.D.N.Y. 1968). Petitioner was not advised of his constitutional rights, was isolated from family and friends, interrogated with varying degrees of intensity over a period of nearly eight hours, confronted by the companion of the murder victim, and perhaps confronted with the statements of his companions, Corley and May, which were made to Detective McVeigh.

When these factors are taken together with the petitioner's youth, ignor-

**1252**

ance as to his rights, the fact that his statements were not spontaneous, and the other attendant circumstances, this court is compelled to conclude under the "totality of the circumstances" that petitioner's statements were involuntarily made as a matter of law and taken in violation of his constitutional rights. Haley v. Ohio, *supra;* Gallegos v. Colorado, *supra;* United States ex rel. Burgos v. Follette, *supra;* Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); Compare Stein v. New York, 346 U.S. 156, 185, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). The court also finds that the finding of voluntariness made by the State court is "not fairly supported by the record." (28 U.S.C. § 2254(d) (8)), United States ex rel. Burns v. LaVallee, *supra.*

 Respondent urges that the admission into evidence of petitioner's statements was, in any event, harmless error. United States ex rel. Moore v. Follette, 425 F.2d 925 (2d Cir.), cert. denied, 398 U.S. 966, 90 S.Ct. 2180, 26 L.Ed.2d 550 (1970). However, in *Moore,* only the second of two confessions was challenged; the first confession was not challenged and was corroborated by other testimony. Here, petitioner's statement that he told May that he had his knife and was ready to use it, was not corroborated by any other evidence. Since trial counsel sought to persuade the jury that petitioner did not intend to kill Marshall, the admission of petitioner's statements was not harmless error. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967); Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1957); Cf. United States ex rel. Graham v. Mancusi, 457 F.2d 463 (2d Cir. January 28, 1972).

Accordingly, the within petition for a writ of habeas corpus is granted, and petitioner is ordered discharged from custody under the present judgment of conviction. Opportunity will be afforded respondent to either appeal from this grant of the writ or to retry petitioner if that procedure is deemed advisable. Therefore, execution of the writ will be stayed for a period of 30 days. At the end of that period of time, if there has neither been an appeal taken from this ruling nor an initiation of proceedings looking to petitioner's retrial, the writ will be executed and the petitioner released.

Pursuant to 28 U.S.C. § 2253, the court hereby issues a certificate of probable cause for appeal.

It is so ordered.